Good morning, your honors. May it please the court. My name is Nisha Patel and I represent the petitioner in this matter, Mr. Osmani Valencia Martinez. It's a pleasure and an honor to be before this court today. If this court so allows, I'd like to reserve one minute for rebuttal. Thank you. This case pertains to Mr. Martinez's reinstated removal proceedings. In the proceedings, the immigration judge issued an adverse no reasonable fear determination, which Mr. Martinez appealed internally to the Board of Immigration Appeals. Can I ask you, did your client get one of those notices like the petitioner in Ayala did? Your honor, I believe you're referring to the inconsistent statements in Ayala. Well, just the misadvice to say, you know, where there is no appeal available, but the agency nonetheless tells you, you have 30 days in which to file with the BIA. Did you, did your client get one of those too? No, your honor. The cases, the facts in Martinez differ slightly from the facts in Ayala, but we still believe, your honor, that Ayala is controlling and dispositive on the issue of finality. Why is that when it seems as though one of the key factors for the court in Ayala was that the petitioner had been affirmatively misled into thinking that he or she, I can't remember now, needed to go to the BIA. It's true, your honor, that the same level of inconsistent statements do not exist in this case. But the agency in Martinez's case did certainly mislead Mr. Martinez into believing that the immigration judge's decision was not final. No, because the note, I can't remember what the piece of paper is, but it said, this order is final. No administrative appeal is available. And cited the reg that, uh, you know, provides for that. So I don't, how can you say that the agency told him that he was allowed to appeal? I understand your honor. Um, so after Mr. Martinez filed his, um, appeal with the board, the board responded with a, a filing receipt and the filing receipt first confirmed that the proceedings were ongoing, but second had, um, why, why did it confirm that the proceedings were ongoing as opposed to confirming we've received your appeal? Understood your honor. But, but, um, Mr. Martinez, pro se immigrant, um, didn't necessarily understand this very complex landscape and can, you know, when, when he received the, uh, filing receipt, um, you know, for him, there was no indication on there that there was any, you know, filing issues or lack of jurisdiction issues. And in fact, the filing receipt noted specifically, um, as a warning, if you leave the United States before filing this appeal, but before the board issues a decision, your appeal will be considered withdrawn and the IJ's decision will become final as if no appeal had been taken. Now that, that filing receipt in, in my opinion, clearly suggests that the immigration judge's decision was not final until, unless of course he left the country before the board perhaps made a decision. Um, and I, on top of that, you know, after providing this, what I consider an incorrect instruction, um, the board then took 26 additional days to summarily dismiss for lack of jurisdiction time that Mr. Martinez could have used to timely file his petition in this court. Um, but what's the, if you have the AR site for the, absolutely your honor, that is, um, AR 0 0 0 0 4. What is, I'm sorry. The filing receipt. Oh, yeah. I just wanted to look at that. So what you're arguing about it, this is all on that receipt? Yes, your honor. Instructions to the, the, the appellate in this case? Yes, your honor. All right. Um, it is, can I just, cause I, I looked at this receipt yesterday and have a question about it before you go on. Certainly. Um, it, it, it's not just a receipt as in a date stamped received. There is the point that somebody at the BIA, uh, typed in, your client didn't, that he was appealing a reasonable fear determination, but it wasn't immediately kicked back. If this gets to your point that it did take four weeks to say, Hey, we don't do these. Yes, absolutely. Your honor. And in fact, this court in Ayala noted specifically that to avoid future instances like this, um, the board should more quickly summarily dismiss for lack of jurisdiction. Um, which, you know, we're the, was the situation here, but, but your honor also, you know, regardless of the misunderstanding, before you leave this receipt, um, four weeks, this is a very busy court. So, you know, I, I have some concern about that, but is there anything else about this receipt getting back to judge Watford's question? Because we're talking about whether or not Ayala is distinguishable. Is there anything else about this receipt that you think, um, um, communicated to your client that his appeal was ongoing? Your honor, aside from the points I've already made, um, I don't think there's anything else on the receipt. Um, but just given the fact that he was a, you know, pro se litigant and you know, didn't speak much English, I obviously, because there's even three cases on the docket today that relate to this issue. I think that just shows how complex this field is and how really difficult it is for someone to kind of navigate through it if they don't even understand the proceedings. But, but more, more than that, your honor, it's our position that this court does not need to find inconsistent instructions to apply Ayala here because the rationale in that case does not turn necessarily on the inconsistent statements. And, and I'd like to go through the rationale in Ayala, um, to explain my point there. So Ayala first held that, um, 8 U.S.C. 1101, which is the finality statute, which is the same finality statute here, um, you know, doesn't, it doesn't provide a clear answer as to finality where the, where board review is precluded, which is the case here. And, and then said that the board proceedings were ongoing and thus the order was not final until the proceedings ended. But the answer as to whether the board That cannot fundamentally differ from case to case. And, and this question doesn't depend on whether there were inconsistent statements. The second rationale in Ayala, yes, your honor. So I just want to be clear. So your position is that no matter how clearly the agency tells a petitioner that you do not have a right to take an administrative appeal, go to the ninth circuit, um, you have 30 days in which to do that. Do not bother us because we have no jurisdiction to handle this. No matter how clearly that's expressed, the petitioner can still file this fruitless appeal and just drag things out until the BIA gets around to dismissing it for lack of jurisdiction. Well, you know, your honor, in this particular case, and I think, you know, the, the court's finding in Ayala is very pertinent, but the court notes that the board could potentially avoid delay in this sort of, you know, these sorts of situations by, for example, instructing, um, immigrants. I know. And I'm saying, yes, your client was given an instruction. This, this order is final. No administrative appeals is available. You're just saying that for a pro se person, that's not clear enough. And so I'm asking if the order had in fact included the language that Ayala mentioned, um, therefore you must take an appeal to the ninth circuit within 30 days. Is your position still that he could go ahead and file a, this appeal, get this filing receipt for appeal and the administrative proceedings would be deemed to be ongoing? No, your honor. I can see that if the, if the instruction on the immigration judge's order was clear in the way that the Ayala court mentioned, I think that that would reduce any prejudice and that would be caused to the petitioner. I have a slightly different concern. I would share Judge Watford's concern, but it's not that they said no appeal with the BIA go to the ninth circuit. The regulation says no litigation period. And I'm mindful that your client didn't apparently rely on this unambiguous statement that there's no opportunity to appeal because you got appealed. You appealed in the wrong court, right? Right. But it is, is it troubling or should we be troubled by the fact that this regulation unambiguously tells the litigants there's no opportunity to appeal period? Um, yes, your honor. Of course. What do we do about it? Because I don't think there was reliance on this statement in your case. Was there? No, your honor. That's correct. There wasn't the same instruction in, in the, in the case for Mr. Martinez. Um, however, in the immigration judge's order, um, to Mr. Martinez, it noted that it was a final order and that no administrative appeals exist, but, but like Ayala said, and, and, and also, I mean, this is in light of the, the kind of different instruction in the filing receipt. The Ayala court really emphasized the fact that this is a very confusing landscape and why can't we make these instructions clearer? Um, unfortunately, you know, there's no clear cut answer here, but, but the prejudice seems clear. And if the instruction isn't going to change, if the board can't change the instruction, then the board should at least summarily dismiss this sooner. Because if they had, Mr. Martinez in this case would have easily met the 30 day deadline. He filed his petition in this court within eight days of the immigration judge or the board's dismissal. Thank you, counsel. Thank you, your honor. I will reserve the rest of my time here a little. May it please the court. Good morning, your honors. Matthew Connelly for the respondent, the attorney general of the United States. Your honor, these are reinstatement proceedings. These are not the usual removal proceedings. These are proceedings for individuals who already have removal orders and then have illegally re-entered the United States. So these proceedings follow a different track. The purpose of the reasonable fear proceeding. Can I ask, we're pretty familiar with the background on that. Uh, is there another context besides this one in which a petitioner, uh, does not have to take or cannot take an appeal to the BIA? Is there any other context? Expedited removal proceedings have what is known as a credible fear determination and the credible fear determination. No appellate review period of that, right? BIA or to our court. Um, of the credible fear determination itself, right? Certainly is no appeal to the BIA, your honor. Okay. So is there, I'm just curious, is there some other context where BIA review is just, it's categorically precluded? Where there is no BIA review, the expedited removal, excuse me, the reinstatement proceedings have no BIA review. Yeah. Is there any other context other than that one? There aren't that many, right? There's the administrative removal for aggravated felons. I am, they escape me at the moment. Yeah. The reason I'm saying that is that it does seem, I'm just wondering if you agree, it does seem a little unfair, especially for pro se petitioners where in just about every other context, they're required to take an appeal to the BIA. Otherwise they won't have been deemed to have exhausted their claims. So there's this one narrow kind of true, that's sort of a trap for the unwary, right? Cause he's, he's obviously being diligent. He's trying to do what he thinks is required. And it just so happens that in this one little narrow area, not only can you not do this, but by doing this, you're going to forfeit your ability to get any judicial review, right? That seems unfair. I would say that it is more complex. I would not necessarily say that it is unfair. Not every pro se litigant makes the same mistake that Mr. Martinez did. But it's really likely that a pro se litigant would, and it's really likely given the very heavy caseload of the court that the time's going to run by the time the BIA gets around to saying, Oh, whoops, you know, we don't do these. We don't have jurisdiction. Seems to me four weeks. That's not a surprising delay. It's not, it is, it happens. Certainly, Your Honor, it is, it is well within the realm of possibility, but the board is working under a director from Congress to limit or to prescribe the number of appeals and to limit the additional appeals to expedite proceedings. The board has promulgated regulations that indicate that there is nothing left at the administrative level once that negative reasonable fear petition, the statutes made clear that once an order is final, the proper place to take any further review is the appropriate court of appeals. So here's the deal. I think that's all correct. And then on the other hand, Congress has also said, we don't send people, even people who have a valid removal orders in place. If there really is a credible fear of, uh, you know, future, future persecution, future torture, we don't send those people back. There's, there's an avenue, which is why, and so that's, that's a congressional directive too. And that's why this, what judge Watford is describing is a bit of a trap for the unwary is certainly very troubling. Well, that is why the reasonable fear proceedings exist and why the credible fear proceedings exist is to give those individuals a chance to express their fear, to have the concerns for their fear evaluated first by an asylum officer and then by an immigration judge. And they, and then they are subject to judicial review after that. So there is no telling us what we know. And could you, could you go to this point judge Watford is raising? If your point is, your honor, is a complex, it is, but I don't believe that it's unfair or a trap for the unwary. The individual is told when the administrative process ends and once the administrative process ends, then the next step is the petition for review. What about the regulation, uh, that tells unequivocally says there's no opportunity to appeal period. It doesn't say go to the circuit court. It says no appeal shall lie from the immigration judge's decision period. I'm looking at G1. That is true. But the statute says that once the order is final, then the avenue is to the court of appeals. That is where administrative decisions are reviewed. So the two of them have to be read together. Is it your position that the agency is free to adopt this regulation if it's conflicts with the statute? If it comports with the statute, yes, the agency is. I said, I must have, I mumbled. If this regulation conflicts with the statute because the statute may explain that there is an avenue of appeal and this says there isn't, is that a problem? If it conflicted with the statute, your honor, I suggest that it does not conflict. Okay. And it doesn't conflict because? Because the appeal process is through the administrative agency. The petition for review is not strictly an appeal. Counsel for the appellant raised the issue as to, I guess, what is referred to as a receipt that it contained either misleading or incorrect instructions. Do you want to address that issue? That issue, your honor, is as everyone knows, the Board of Immigration Appeals is a busy court. It has a clerk's office. Its clerk's office is intended to process the paper and ensure it gets to the right place and that the right notices go out. But the clerk's office is not staffed by experienced attorneys to go ahead and try to make interpretations of what comes across. Their job is to get the appeal when it comes in and get it into the system. But the receipt is generated by the BIA, is that correct? The receipt is generated by the Executive Office of Immigration Review, which provides administrative support for the BIA, yes. And somebody presumably looks at the receipt and what's on it before it becomes part of the form, am I correct? As I understand the argument, that form receipt either contains misleading or incorrect information. And I'm going to have to go back and look at it. That's AR, I believe, 004. But I guess I'm, can you address that issue? I don't believe that that information is misleading. That is an appeal. It is reasonable fair proceedings. There should be no appeal from reasonable fair proceedings. But we're asking the clerk to make that legal judgment and then reject the decision and send it back. It's enough for the clerk to say there's nothing here for you to appeal at all when there's no final immigration judge decision. But to get an immigration judge decision and then sift it through, there is starting to ask a little bit more of the bureaucratic process. To a certain extent, the petitioner has to understand what he is asking for. It strikes me that, back to this being a bit of a trap for the unwary, that there are compelling arguments that could be made. Your opposing counsel's made some of them for an equitable tolling. Were we in equitable tolling land if that were an available remedy? But this is jurisdictional, right? They have to get to the Ninth Circuit within the permissible time. Isn't that the problem? The time limit, the 30-day time period, is certainly jurisdictional. It is not subject to tolling. In fact, IALA did not toll the 30-day time limit. Right. Instead talked about on the front end that the IJ's order wasn't final. That was a different situation, right? That is correct. It based that purely on the circumstances of that case. In other contexts, we have cases like Bowles where we have case law where district court judges have affirmatively misinformed people, you know, accidentally misinformed people about how much time they have to get their appeal filed, and yet when they've been late, they've been late. That is correct, Your Honor. This is different than the cases that deal with the front end administrative claim filings such as Wong, et cetera. Well, I guess my question is, I'm sorry if I'm not speaking loudly enough. Hearing aids are in the shop, I apologize. I grant you that IALA has a rationale that doesn't apply here because there was that affirmative misstatement or misleading advice, but why wouldn't we extend IALA along the same rationale to say that at least when the notice doesn't unambiguously tell the petitioner, here's how you must proceed to get judicial review, namely, you have 30 days to go to the Ninth Circuit. Absent that statement, why wouldn't it be fair to say that, look, unless you, the agency do that, we're going to deem the administrative proceedings to be ongoing until you finally issue the dismissal for lack of jurisdiction? Cutting off IALA where the board has made an affirmative, or where the immigration judge has made an affirmative misstatement, as opposed to extending it to any time that the regulations could have been better and everything could have been written more clearly. There are very few things that are written in the English language that cannot benefit from some editing. Yeah, just to be clear, I'm not talking about the regulation. I'm talking about the notice. I'm talking about the notice as well, Your Honor, is that the notice has changed. In fact, the notice in IALA was different. It said there is no appeal. The notice here says there is no administrative appeal, which should make it very clear that your appeals within the administrative system are over. Well, but obviously it's not clear enough because we have two petitioners. I think you're here for the next case as well, right? They got the same notice. We have two. The third one will be different, Your Honor. Oh, I know. But I'm saying that this isn't, I mean, I grant you if it was one out of a million people made this mistake, but I'm betting that there are, you know, we have two before us today and I'm betting that there are more. So obviously the notice that you guys are, not you, but you know, the BIA, the immigration judges are issuing, it's not clear enough because people are getting tripped up. And these two did file timely. They just filed in the wrong place. Yes, but this is, this type of excusable neglect is they filed not just, they filed a pleading in a court that had no jurisdiction to deal with their concerns. I would disagree. The regular, it may be that the BIA has claim processing rules where it's chosen to go this route, but is your position really that the immigration court didn't have jurisdiction to hear this? The immigration court. Congress didn't give them jurisdiction to hear this? Because that's not what the statute says. That's not what this regulation says. So let me just ask, is that really your position that the court, the BIA lacked jurisdiction? The BIA lacks the authority because the BIA gets its jurisdiction from the regulations. Right, so the regulation, the regulation 1208.31a, little a, the last sentence there says the service has exclusive jurisdiction to make reasonable fear determinations and EOIR has exclusive jurisdiction to review such determinations. EOIR includes the BIA, right? It's the whole hierarchy, vertical hierarchy. I would say that the further regulation, the, the subsequent regulation indicates that that portion of EOIR that makes those decisions is the immigration court. I agree. My point was only that that's a, that's a claims handling processing rule internally that court has decided to allocate its work that way and I'll certainly grant you that's none of our business, but you, you, you did use the word jurisdiction and I think that's quite contrary to what Congress said. So I'm giving you an opportunity to tell me why I'm wrong. All right, we're quoting with the Attorney General's regulations in 1003. Or 1001.3 and the, and we're also quoting the Attorney General's regulations in 1208.31. And the Attorney General's regulation purports to interpret its jurisdiction as encompassing all of this obligation to review, right? I don't believe that the Attorney General's intended for the board to review reasonable fear determinations. I agree with you and my question is just whether or not that is jurisdictional or whether they just have decided internally that's how they're going to handle their workload basically. I think that. It strikes me as a claims processing rule because the first sentence here in little A, sorry, the last sentence in little A says that EOIR has jurisdiction to do the whole shoot and match. I would say that it's very difficult to make a claims processing jurisdictional distinction in the regulations since the board's authority comes strictly from the Attorney General. What about the Hernandez case that makes that? I'm sorry, ma'am? Are you familiar with the Hernandez case where we talked about the claims processing rules between the BIA and the IJs? No, Your Honor, I am not. Fair enough.  We've taken you over time. No, Your Honor, I'm finished. I'll be back in a second. Okay. Don't get too comfortable. I think we're going to see you in just a minute. Yes. We'll hear from opposing counsel. Could you please put a minute back on the clock? Thank you, Your Honor. You bet. I'd just like to address just a few points. The government argued that the finality statute in this case does not conflict with the agency regulations, but the IALA court found specifically that it does. The finality statute in this case states that an order becomes subject to the agency regulations after the board affirms or after the time to appeal to the board expires. I don't understand how to apply that because that's an appeal from an order of removal. That's not really what's being appealed here. Your client already had a final order of removal. Trying to reinstate it. They're trying to reinstate it, and your guy is trying to press his reasonable, credible fear determination. So is that really the right place for us to look? Yes, Your Honor, it is the right place to look. And the IALA court agreed that, in fact, that finality statute also applies to situations of reinstated expedited removal orders as well. Right. And I think the reason it does is because it's all we've got. And it kind of goes back to Judge Watford's point is that it seems like everything else goes through the BIA. And that reg is set up that way. That time limit that you're talking about specifically defines the trigger point from the BIA's decision or lack thereof. And so I think it's the only place we can look, but it's kind of a square peg in a round hole. I understand your concerns, Your Honor. But this court in IALA stated that that applies. And like you said, almost every other instance allows for board appeal. And this is the one instance where it doesn't. Again, I think that goes towards prejudice here and just the confusing landscape. And how are we supposed to, you know, how are these pro se immigrants supposed to understand that there's this one, you know, small little, you know, application where they can't apply, they can't appeal? All of that goes to why there's a strong argument for equitable tolling or equitable relief. But we have a very strict jurisdictional requirement. You have to get here within 30 days. So what's your response to that? Your Honor, it's our position. Unfortunately, my time is up. But it is our position that equitable tolling does apply and 1252B1 is not a jurisdictional bar, which I believe Counsel for Torres Sandoval will actually address. Anything further, Judge? Thank you so much for your arguments, both of you. Thank you, Your Honors. We'll go on to the next case on the calendar.
judges: Christen, Watford, Soto